**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **JULIE CLAIRE C.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 22-1028-JWL** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the

Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error

in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment

shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the

Commissioner's final decision.

**I.      Background**

Plaintiff protectively filed an application for DIB on July 29, 2019.  (R. 24, 330).

After exhausting administrative remedies before the Social Security Administration

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the
interest of protecting the privacy interests of Social Security disability claimants, it has
determined to caption such opinions using only the initial of the Plaintiff's last name.

(SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision

pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in finding two medical

opinions[2] persuasive but failing without justification to include in the residual functional

capacity (RFC) assessed mental limitations contained in those opinions.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to

the weight, not the amount, of the evidence.  It requires more than a scintilla, but less

than a preponderance; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see

also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

Consequently, to overturn an agency's finding of fact the court "must find that the

---

[2] Plaintiff addresses both medical opinions and prior administrative medical findings in
his argument respecting medical opinions.  "Prior administrative medical findings" is a
term of art referring to the findings of state or federal agency physicians or psychologists
about a medical issue at an earlier level of review.  20 C.F.R. § 404.1513(a)(5).  Although
the term is broader in scope than a "medical opinion," id. at § 404.1513(a)(2), the terms
are often used interchangeably and are evaluated by the same standard, id. § 404.1520c,
and the court will follow that practice in this case except when necessary to draw a
distinction.

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-</u>

<u>Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

<u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>,

<u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in

<u>Bowling</u>)).  Nonetheless, the determination whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

<u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. § 404.1520; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th

Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting

<u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether the

claimant has engaged in substantial gainful activity since the alleged onset, whether she

has a severe impairment(s), and whether the severity of her impairment(s) meets or

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

II.     Discussion

Plaintiff points out that the state agency psychological consultant opined that while Plaintiff "could understand and remember at least four-step instructions, she might have some difficulty sustaining that level of function due to her mood issues and PTSD symptoms."  (Pl. Br. 8) (citing R. 147).  She also notes that "the psychological consultative examiner opined that [Plaintiff] was 'most likely capable of understanding complex (4 or more stepped) instructions', [sic] but she had a moderate limitation in the

ability to sustain concentration, persist, or maintain pace." (Pl. Br. 8) (quoting R. 603).

She acknowledges both the consultant's and the examiner's opinions were consistent

with the ALJ's finding Plaintiff can understand, remember, and apply instructions to

perform simple and detailed tasks but not complex tasks. Id. 9. She argues,

> each narrative opinion went a step further by indicating that there would be
> a limitation in the ability to maintain or sustain attention and concentration
> even for those simple and detailed tasks. The ALJ's RFC was silent on any
> limitation in the ability to sustain concentration and attention.

Id. Plaintiff argues an ALJ must resolve conflicts between the RFC assessed and medical

opinions he finds persuasive and discusses case law from this and other courts illustrating

and interpreting this principle. Id. at 9-12.

The Commissioner discusses the opinions of the psychological consultants and of

the consultative examiner (Comm'r Br. 9-11) and argues Plaintiff "is relying on a flawed

premise that the ALJ was rejecting the psychologists' conclusions about her attention and

concentration, when in fact he agreed with them." Id. at 11 (noting the ALJ assessed

moderate limitations in the broad mental functional area of concentrating, persisting, or

maintaining pace in his step three assessment, and found the opinions at issue

persuasive).

## A.    The ALJ's Relevant Findings

The ALJ found Plaintiff has mental impairments of posttraumatic stress disorder

(PTSD) and adjustment disorder with depressed mood. (R. 26). Respecting the four

broad mental functional areas, the ALJ found mild limitations in the areas of

understanding, remembering, or applying information; and of interacting with others. Id.

at 27-28.  He found Plaintiff has moderate limitations in the areas of concentrating,

persisting, or maintaining pace; and of adapting or managing oneself.  (R. 28).  He found

Plaintiff has the mental RFC to "understand, remember, and apply instructions to perform

simple and detailed tasks but not complex tasks.  The claimant can adapt to occasional

changes in a work environment with these limitations."  Id. 29.

      The ALJ noted Plaintiff "stated that due to her mental health issues, she had

disabling functional limitations in social functioning and dealing with stress in the

workplace.  The claimant reported that she suffered from cognitive issues, which caused

difficulties with concentration and early dementia."  Id. 29-30.  He found Plaintiff's

allegations of symptoms "not entirely consistent with the medical evidence and other

evidence in the record for the reasons explained in" his decision.  Id. 30.  The ALJ noted

despite allegations of significant mental health limitations; lack of concentration from

depression, anxiety, and PTSD, Plaintiff pursued no mental health treatment and mental

status examinations were normal.  Id. 32.

      The court quotes the relevant parts of the ALJ's discussion of Plaintiff's mental

impairments and the opinion evidence:

> In February 2020, Disability Determination services referred the claimant
> for psychological testing that was conducted by Ted Wunderlich, Psy.D.
> The claimant reported there was no history of psychiatric hospitalizations,
> individual or group therapy or suicidal attempts.  She indicated that she had
> always maintained employment and after losing this capacity, she had not
> adjusted well.  Dr. Wunderlich noted that the claimant appeared overtly
> anxious throughout the evaluation, with occasional wringing of her hands
> while speaking.  On behavioral observations, the claimant was dressed in
> weather appropriate attire, waring [sic] moderately clean clothing.  She
> engaged in poor eye contact throughout the evaluation.  Her thought
> processes were lucid, linear and goal oriented.  The claimant's performance

on the Montreal Cognitive Assessment – Basic Version (MOCA-B) was within normal limits with a resultant score of 28/30.  There were no deficits in immediate recall or remote recall noted.  Her attention and concentration was [sic] within normal limits.  She was able to complete a serial threes task without error; complete a reverse serial sevens task without error; and she demonstrated the capacity to complete simple addition, subtraction, multiplication and division problems.  The claimant was able to make change in her head when offered a hypothetical financial transaction.  The claimant's estimated intellectual ability fell in the low average range but her responses to judgment-oriented questions was within normal limits (exhibit B8F).

Following the evaluation, Dr. Ted Wunderlich diagnosed PTSD and adjustment disorder with depressed mood.  Dr. Wunderlich opined the claimant had no limitations in her ability to understand and remember instructions.  She was most likely capable of understanding complex (4 or more stepped) instructions.  She had moderate limitations in her ability sustain concentration [sic] persist or maintain pace; mild limitations in her ability to maintain appropriate social interactions with others; and moderate limitations in her ability to adapt or manage oneself.  The claimant appeared to be capable of identifying the difference between acceptable and unacceptable work, but noted that much of her limitations from previous work were physical in nature (exhibit B8F).

\*\*\*

Overall, the undersigned finds that despite the claimant's allegations regarding her mental impairments, the claimant has demonstrated few limitations at her mental consultative examination and her treatment providers have not suggest [sic] that there is a suspicion of significant cognitive deficits.  However, based on the claimant's reported activities of daily living and testing, the claimant remains capable of performing work with simple and detailed tasks but not complex tasks.  The claimant can adapt to occasional changes in a work environment with these limitations.

\*\*\*

The undersigned finds that the opinion of the State agency medical [psychological] consultant (exhibit 4A) that indicated the claimant has none to moderate mental functional limitations is persuasive.  This opinion is supported by a review of the consultative examiner, Dr. Ted Wunderlich's findings and other record evidence.  It is also consistent with Dr.

> Wunderlich's opinion and there are no opinions suggesting greater
> limitations.
>
> The undersigned finds that the opinion of the consultative examiner, Dr.
> Ted Wunderlich (exhibit 8F) is generally persuasive.  The undersigned
> notes that this opinion is supported by an examination and appears
> consistent with the claimant's other treatment history.

(R. 32-34).

### B.    Analysis

Plaintiff is correct that an ALJ must resolve conflicts between the RFC assessed

and the medical opinions he finds persuasive, but Plaintiff has shown no conflict in this

case.  As Plaintiff points out, the state agency psychologist found she "can understand

and remember at least 4 step instructions," and also found "[s]he might have some

difficulty sustaining that level of function due to her mood issues and PTSD

[symptoms]."  (R. 147).  Plaintiff is also correct that "the psychological consultative

examiner [(Dr. Wunderlich)] opined that [Plaintiff] was 'most likely capable of

understanding complex (4 or more stepped) instructions', [sic] but she had a moderate

limitation in the ability to sustain concentration, persist, or maintain pace."  (Pl. Br. 8)

(quoting R. 603).  Moreover, she is correct that both the consultant's and the examiner's

opinions are consistent with the ALJ's finding Plaintiff can understand, remember, and

apply instructions to perform simple and detailed tasks but not complex tasks.  Id. 9.  And

Plaintiff recognizes that the ALJ found both opinions (at least generally) persuasive.  (R.

34).

Plaintiff argues, "The ALJ's RFC was silent on any limitation in the ability to

sustain concentration and attention," and thereby misses the ALJ's RFC limitation to

accommodate for Plaintiff's limitations in attention and concentration within the

moderate limitation he found in the broad mental functional area of concentrating,

persisting or maintaining pace.  Dr. Wunderlich explained his finding respecting

Plaintiff's understanding and memory and sustained concentration and persistence

limitations:

> [Plaintiff] has no limitations in her ability to understand and remember instructions.  She is most likely capable of understanding complex (4 or more stepped) instructions.  She has moderate limitations in her ability sustain [sic] concentration, persist or maintain pace.  This finding is based on reported functional ability as opposed to her demonstrated attention/concentration functioning.  It is possible her trauma-related arousal/reactivity deficits cause varying levels of deficits in her attention/concentration.

(R. 603).  Thus, both the state agency psychological consultant and Dr. Wunderlich found

Plaintiff's understanding and memory sufficient to perform four or more step instructions

but that she would potentially be limited from (have some difficulty sustaining)

functioning at this level because of concentration and attention factors such as mood,

PTSD symptoms, and her reported functional ability.

What Plaintiff misses in her argument is that Dr. Wunderlich explained that 4 or

more stepped instructions are complex instructions, id., and the ALJ specifically noted

that explanation in the decision.  (R. 33).  Therefore, when the ALJ specifically limited

Plaintiff to simple and detailed tasks but not complex tasks he was acknowledging the

limitations suggested by Dr. Wunderlich and the psychological consultant and limiting

Plaintiff to three or less stepped instructions to accommodate her limitations in

concentration, persistence, or pace.  Plaintiff has not shown an inconsistency between the

RFC assessed and the opinions of Dr. Wunderlich or the state agency psychological consultant and does not point to record evidence compelling a greater limitation.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 8, 2023, at Kansas City, Kansas.

<u>s:/  John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**